**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) | Case No. 17-cv-576 |
| *Plaintiffs*, | ) ) | Judge: |
| v. | ) ) | Magistrate Judge: |
| SONAG READY MIX, LLC, a Wisconsin limited liability company, | ) ) ) | |
| *Defendant*. | ) ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Arthur H. Bunte, Jr., one of the Pension Fund's present trustees, allege as follows:

**JURISDICTION AND VENUE**

1.     This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and is a suit to enforce the terms of the applicable collective bargaining agreements, Participation Agreements and Pension Fund Trust Agreement (the "Trust Agreement") in order to recover employer contributions owed to the Pension Fund by Defendant in accordance with those documents.

2.     This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

3.     Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Pension Fund is an "employee benefit plan" as that term is defined in ERISA and is administered at its principal place of business in Rosemont, Illinois. Venue is also proper in this

Court pursuant to the forum selection clause contained in the Trust Agreement which designates this district as the appropriate forum for lawsuits to collect unpaid contributions.

## PARTIES

4.     The Pension Fund is an employee benefit plan and trust, with its principal office located at 9377 West Higgins Road in Rosemont, Illinois.

5.     The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6.     Plaintiff Arthur H. Bunte, Jr. is a trustee and "fiduciary" of the Pension Fund as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Arthur H. Bunte, Jr. is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7.     Defendant Sonag Ready Mix, LLC ("Sonag") is a corporation organized under the laws of the State of Wisconsin.

8.     Sonag is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

9.     Local Union No. 200 of the IBT ("Local 200") is a labor organization which represents, for purposes of collective bargaining, certain employees of Sonag, and employees of other employers in industries affecting interstate commerce.

10.     Nuvo Construction Company, Inc. ("Nuvo") is a corporation organized under the laws of the State of Wisconsin. Nuvo does not participate in the Pension Fund, but previously participated in the Pension Fund during the period of the week beginning May 1, 2005 through the week ending December 19, 2009.

11.     Sonag and Local 200 have been parties to a series of collective bargaining agreements pursuant to which Sonag has been required to make contributions to the Pension Fund on behalf of its covered employees.

12.     Sonag is also a party to a Participation Agreement under which Sonag agreed to be bound by the Pension Fund Trust Agreement and all rules and regulations promulgated by the Trustees under said Trust Agreement.

13.     Under the Trust Agreement, Sonag was required to "remit continuing and prompt contributions to the [Pension Fund] as required by the applicable collective bargaining agreement ..."

14.     For periods prior to February 15, 2010, the Trust Agreement provided:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an employer for contributions or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this

section plus liquidated damages in the amount of 20% of the unpaid contributions or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions or withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by Chase Manhattan Bank (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

15.     Effective February 15, 2010, Article XIV, section 4 of the Trust Agreement provides:

Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due contributions and/or other money (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater). ... Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

16.     Article XIV, section 12 of the Trust Agreement provides:

An Employer shall be required to pay audit fees and audit costs if litigation is required to obtain access to any records that are requested in connection with an audit and/or if litigation is required to collect additional billings that result from the audit. Audit fees will be calculated at the market rate for the metropolitan Chicago area.

## STATUTORY AUTHORITY

17.     Section 515 of ERISA , 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

18.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A)     the unpaid contributions,

(B)     interest on the unpaid contributions,

(C)     an amount equal to the greater of--

    (i)     interest on the unpaid contributions, or

    (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)     such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## CLAIM FOR RELIEF

19.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 18 as though fully set forth herein.

20.    The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees.   Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

21.    The Participation Agreement signed by Sonag indicates that "[t]he Employer acknowledges that it is aware of the Fund(s)' adverse selection rule (including Special Bulletin 90-7) and agrees that while this Agreement remains in effect, it will not enter into any agreement or engage in any practice that violates the adverse selection rule."

22.    The adverse selection rule prohibits employers from adopting practices that limit the employees on whose behalf the employer is required to remit contributions to the Pension Fund.

23.    Article III, Section 8 of the Trust Agreement provides:

The remedy of the termination of an Employer's participation set forth in Article III, Section 1 and Article IV, Section 20 is not the Fund's exclusive remedy in the event of a violation of the Fund's adverse selection rule.   The Fund shall also be entitled to collect additional contributions from an Employer that violates the Fund's adverse selection rule in an amount equal to the contributions that would have been paid to the Fund but for the adverse selection rule violation.   The contributions paid under this section shall be treated as contributions required to be made for the purposes of computing withdrawal liability under 29 U.S.C. §§ 1381-1451 and contribution base units on any contributions paid under this section shall be

calculated by dividing the amount paid under this section by the applicable contribution rate.

24.     Article V, Section 2 of the Trust Agreement provides in part:

All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing (including a collective bargaining agreement or other Union-Employer agreement in cases where the interpretation is necessary in order to determine the application of the terms of this Agreement, a Participation Agreement, the Plan or any other Fund document or agreement to the provisions of the collective bargaining agreement or other Union-Employer agreement), decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all parties or persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions constructing plan documents of the Pension Fund.

25.     The Pension Fund investigated to determine whether the relationship and overlapping of work between Sonag and Nuvo would be a violation of the Pension Fund's adverse selection rule.

26.     The investigation revealed that Sonag and Nuvo had been operating as one company by intertwining their operations, and that Sonag caused work that could be covered by its collective bargaining agreements and Participation Agreements with Local 200 to be performed by Nuvo's drivers who do not participate in the Fund since a date no later than December 13, 2009, in violation of the adverse selection rule as set forth in Article III, Section 8 of the Trust Agreement.

27.    The intertwining of driving operations and shifting of work to Nuvo violates the Pension Fund's adverse selection rule and the Pension Fund is entitled to additional contributions from Sonag based upon the work performed by Nuvo.

28.    Pursuant to the Trust Agreement, Article III, Section 1, the Trustees are authorized to terminate an employer's participation in the Pension Fund if the Trustees determine that the "[e]mployer is engaged in one or more practices or arrangements that threaten to cause economic harm to, and/or impairment of the actuarial soundness of the Fund."

29.    At the Pension Fund's Board of Trustees meeting, held on November 9, 2016, the Trustees determined that, due to the conduct set forth in paragraphs 26 and 27, Sonag was in violation of the Fund's adverse selection rule and its participation should be terminated.

30.    The termination of Sonag's participation in the Pension Fund was effective on December 18, 2016.

31.    The Trustees determination that Sonag was in violation of the adverse selection rules was not arbitrary or capricious and was correct under any standard of review.

32.    Sonag owes the Pension Fund past due contributions for the period of December 13, 2009through December 18, 2016 that are now past due as a result of the conduct set forth in paragraphs 26 and 27 in an amount that is not known with specificity by the Pension Fund but based upon seniority lists provided by Local 200 is estimated to be approximately $1,000,000, not including interest.

33.    Despite demands that Sonag perform its statutory and contractual obligations with respect to remedying its violation of the adverse selection rule and making contributions to the Pension Fund, Sonag has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth herein.

    **WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Sonag in favor of Plaintiffs, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Trust Agreement for:

(i)     all unpaid contributions owed to the Pension Fund by Sonag for the period of December 13, 2009 through December 18, 2016;

(ii)    for the unpaid contributions owed prior to February 15, 2010, interest on the unpaid contributions computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged;

(iii)   for the unpaid contributions owed effective February 15, 2010, interest on the unpaid contributions, computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

(iv)    an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

(v)     attorneys' fees and costs; and

(vi)    audit fees and costs;

(b)     Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)      Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

 */s/ Emily I. Falkof*
Emily I. Falkof
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois   60018-4938
847/518-9800, Ext. 2489
January 25, 2017            ARDC # 6315437